Next case for argument is 17-1883 Robert Bosch Tool Company v. ITC Good morning your honor and may it please the court. Everyone in this case agrees that Bosch made a terrific table saw that was tremendously successful. If the patents in this suit were directed to that machine, I wouldn't be standing here. The ALJ correctly determined that Bosch's product is substantially different from the machines that Dr. Gass described in his patent applications. Now what's happening is that these patents, these remaining two patents, are being used to preempt competition from new and different kinds of safety systems. This is a preemption case. SawStop has literally argued that these kinds of claims cover any mechanism capable of functioning as specified. Now you say this is a preemption case. In your brief you referred to something about functional claiming. What beyond? You have to have a therefore. It's a preemption case and therefore what? Because they preempt the entire correct label is. We know from court cases ranging from the Morse case way back when through Halliburton in 1946 through some lower court decisions more recently that one simply cannot claim the results of a machine. You have to claim the machine that you invented. You can't say I claim anything that retracts a blade when it detects some sort of dangerous condition. I think because of the preemption concerned and the way 101 was described in the Supreme Court's Alice decision, I think section 101 is right where these claims belong. They're directed to the claim except generic hardware. Which I think is the same as the generic. Did you argue this preemption theory in your brief? Yes. I'm just looking at the summary of the argument. You're claiming that the claims are purely functional and impermissibly covers any means. Page 58, your Honor, of our opening brief. In the third line under section 112. I'm going through your argument about Halliburton. Purely functional claim language. I mean, you do say an impermissibly covers any means. Page 58, your Honor, of our opening brief. In the third line under section 112. Under heading 2.5, we wrote that if one pays attention to the intrinsic evidence. I'm sorry. I was just looking at the heading as 2.5. That talks about functional claim. That's right. And in the third line, we wrote that if you track the intrinsic evidence instead of doing a pure Williamson analysis, then the claims are not means plus function and they extend to and preempt all systems and mechanisms capable of performing the recited functions. Even if those systems and mechanisms were invented long ago by others or have not yet been invented. That's exactly what's going on in this case. Now, there are some alternatives to addressing this problem which can be labeled under 101. You could look at it as a claim to fall under 101. The claim is to a woodworking machine comprising a work surface with a cutting region, a cutting tool, a detection system, a reaction system. Can you point me to any 101 case that has ever been written that you think are the best 101 case that you know of that has some claim sort of like this that was found to be patent ineligible? What would be your closest analog among those cases where ineligibility has been determined? So a section 101 case dealing with generic hardware that isn't computer related or biological, something closer to a power tool, Your Honor? I will give you the liberty to choose anything. This is a table saw. I don't see what's abstract about that. I'm really struggling. I honestly think this may be the most bizarre 101 argument I've ever heard in the history of my time on the court. And so I'm trying to find out where you came up with this. It's a very bizarre argument, sir. And I guess I'm just wondering is there some case that led you down this road that made you think, oh, well, if that case was 101, then ours could be too? The Alice case is 101, Your Honor. And that's the case that led me down the road, the generic hardware case, because that's what Alice describes as a patent directed to an idea, which in my view, these claims are directed to the idea of a safety system, not to any particular safety system. And the reason I say that, I think we could look at one of the shortcuts that I mentioned, would be looking at the claim element mechanism having a movable component in the 279 patent. Our contention from the beginning of the case, based on our experts' unrebutted, uncross-examined opinion, was that one of skill and the art, reading that phrase in that patent claim, in the context of the specification and the intrinsic evidence, would understand the movable component to be a break ball. And he or she would understand that based on the specifications, setting forth dimensions such as 1 32nd of an inch, 3 milliseconds, that track perfectly between the claim language, which uses those dimensions, and the specification that uses those dimensions, and would conclude that the movable component is a break ball. In which case, we don't have any infringement issue because our product doesn't use a break. We were informed- Does the break ball contribute to the retraction of the cutting tool? It does, Your Honor. Okay. In the SawStop's primary example, and in their commercial product, the break ball stops the blade, and when it grabs the blade, the blade pulls the blade and the break ball downward. Can I ask you- Go ahead. I was going to say, if the movable component is not a break ball, which is what the ALJ concluded, it concluded it was the plain language, then it's anything that moves. And that, Your Honor, is where I come to the abstract idea problem, because if it's anything that moves, it is, as SawStop itself said to the patent office, covering any machine that will perform this function. No matter how it's engineered or designed, or what kind of component is moving. Earlier cases have looked at this as an issue of indefiniteness. I think that's been a frequent label in the older cases. I was concerned that that label doesn't fit post-Nautilus, because, in fact, if one of skill in the art can look at one of these machines and determine whether, in fact, it detects some sort of dangerous condition through some sort of detection mechanism and retracts the blade with some sort of retraction mechanism, and it does so within 14 milliseconds, one of skill in the art knows whether it is within that claim or whether it is not. And the claim doesn't seem to me to be indefinite under the Nautilus test. I guess the concern I had, I share some of the concerns Judge Moore expressed, but I was also concerned that your functional claiming attack on the claims was a tad underdeveloped. I mean, we've seen a lot of 101 briefs now over the past few years, and they always go through the two-step framework, and they always try to walk us through a particular claim and then go line-by-line through the various limitations and explain why each of those individual limitations ultimately doesn't add to anything, either alone or as an ordered combination to create something that could be considered an inventive concept, because everything that's really in there is just generic, well-understood routine, et cetera, et cetera. And so when I looked at your brief below to the ALJ, as well as your blue brief, I see something that's a little skimpy on the analysis, and so I was concerned about why maybe the ALJ, it wasn't unreasonable to find that your references to Halliburton, Miyazaki, 112.1, 101, it all seemed a little bit of, I don't know, a little underdeveloped. And if you were looking at just that portion of the record, I can understand why you would say that, Your Honor. Immediately after the judge issued his, the ALJ issued his claim construction, in which he said that everything in all the claims is to be given its plain and ordinary meaning without any further elucidation, immediately after that, we filed a motion for summary determination on this issue and which we dealt with Section 101. Well, we filed the brief immediately after the initial markman decision in which we went through all of these cases in detail and looked at the various legal labels, because really what we're talking about is what label is it for what's wrong with these claims. We discussed all the claims, and it was still pending, excuse me, that motion was still pending when we had the hearing, and it was still pending when the hearing was ended, and it was still pending when we wrote our post-hearing briefs. You're correct, Your Honor, that immediately after we filed that motion, the judge, sua sponte, ordered new claim construction briefing on the question of whether, after all these claims were linked in some way to the original claim, to make them concrete in some way, and interpret them under 112F. But, again, if we circle back, I'll reserve the remaining time. Your Honor. All right, I guess there's another split argument. We're running the clock for each of you independently. Okay. May it please the Court. Here, the Commission correctly found that these claims are not invalid as abstract idea as under 101. Bashir failed to apply the two-step test of Mayo analysis to any claim, and the failure to even attempt to apply the two-step test to any claim, and the failure to apply the test is well short of clearly convincing evidence. The Commission also correctly found that the claims are not invalid for being functional. I would like you only to address, if you don't mind, you don't need to address the 101 argument, but I'd like you to just address the functionality with regard to a reaction system, and tell me why it was correct to conclude that's not means-plus-function language, and by the way your answer can include that but go ahead and address why that's not means-plus-function language. So with that specific language, the specification teaches that the... Well, let's start with the claim language. Is there a structure in it? First, tell me, what did people below argue? Did people below try to convince the Commission that this was 112.6 language? So below, both parties argued that the term was not means-plus-function. Specifically, Bosh on Appendix 1817 argued, no party here is a challenger advocating for the application of 112 apps. So below they said this is not 112.6 language, but then they lost, and now on appeal they're saying, well yes it is, and it was a mistake not to treat it as such. They are doing that, yes. Now, below they did present a half-hearted argument that the reaction system is means-plus-function, but they failed to provide any support for that argument. That despite this court's precedent stating that the full claim term and the intrinsic evidence should be considered as means-plus-function analysis, Bosh ignored the intrinsic evidence entirely. And that Bosh only cites a single sentence that concludes the re-expert testimony, and that testimony opines that the term is not means-plus-function. That expert testimony opined that it was not means-plus-function? Correct. I mean, it is a question of law, right? Whether or not something is 112.6 or not, isn't that a question of law? It's claim construction. It is a question of law. It can be based on underlying facts for sure, like any other kind of claim construction, but in this case I guess experts don't generally offer opinions on questions of law. Correct. But under Williamson, the term doesn't use means, so it's presumed not to be means-plus-function. The parties both agreed that the presumption was not rebutted, and no one presented any evidence to the contrary. So here, ALJ correctly found that this term is not means-plus-function. You mean evidence to the contrary? What do you mean by that? Evidence to the contrary? Well, there is no evidence to rebut the presumption, is what I'm saying. That it is presumed not to be means-plus-function, and that has not been rebutted by any evidence. But the ALJ went ahead and did an actual analysis of whether to invoke 112.6. He did perform an analysis of whether to invoke 112.6. He considered the breadth of the claim and the breadth of the specification, and he determined that a person with ordinary skill in the art would understand that. So I guess now that the ALJ has passed on it, and the Commission essentially endorsed it, is it something that can be addressed here on appeal, now that the ALJ has actually passed on the issue? Or would you say that the other side has waived any right to challenge the choice the ALJ made on various decisions on which limitations fall within 112.6, 112.f? With respect to the reacting system, I don't believe that it's been waived, but I would say that when the presumption is on you to rebut it, and you argue essentially both ways that it is means-plus-function and not means-plus-function, that the ALJ reasonably determined that it was not means-plus-function. And in any event, he did waive the detection system. It was not raised below, and that was waived, and the mechanism with the movable component was also not raised below. So that was waived by BOSH by failing to raise it. With respect to the movable component, the Commission correctly construed movable component to have its plain and ordinary meaning. BOSH's appeal brief fails to explain the legal basis for its construction, and that construction violates the principle that limitations in the specification should not be imported into the claims, and also violates the doctrine of claim differentiation. So just turning back to the functional claiming argument, it's plainly contrary to Swinehart, which expressly held that functional language is not per se invalid under 1.12. BOSH made no attempt to apply a 1.12. Swinehart also doesn't quite go so far as to say any and all kinds of functional claiming are perfectly fine. I mean, wouldn't you agree there are some strings attached to the usage of functional claiming? Swinehart makes it clear that functional claiming is assessed under 1.12. So whether that particular functional language is indefinite, lacks written description, or is not enabled. Now BOSH made no attempt to apply any of those 1.12 tests to any claim. And even here today, BOSH was arguing that it wasn't indefinite. So based on all of these failures to set forth a basis why these claims are invalid, that these claims are presumed to be valid. That's all I have. So if there's any questions. Thank you. Good morning. May it please the Court. I'd like to just briefly address the issue of the 1.12.6 question on reaction system. You also maintain, as your friend did, that there was no waiver here? I think they did waive because they presented an argument that it, in fact, was not 1.12.6 repeatedly. So their argument was it is not 1.12.6. Their expert said that at appendix page 337, in my opinion, as set forth in more detail below, of skill in the art would understand this term in this claim to describe any system capable of retracting the cutting tool below the work surface. It's a class of structures, which is what the ALJ found. And he did that. The burden was on them, of course, because there's a presumption. But he went through and did the analysis and looked at the patent, looked at the testimony. All the experts, the parties were all saying it's not 1.12.6. And so that litigation choice by Bosch seems to feed into a strategy of trying to knock out these claims, perhaps under Section 101. Because if all the limitations are so broad and generic that they encompass any and all items that may do the various functions, then perhaps the claim is nothing more than the idea of a table saw where if you touch the saw, the saw will immediately stop. And so therefore, if that is an abstract idea, then the claim covers any and all means of accomplishing that abstract idea. Maybe there's some small ancillary things on the side, but that would be the basis for why the claim would fall under 101. So I guess in a sense, it's probably, I think, in your interest to argue that, well, these limitations are not so purely functional, whether it's the reaction system or the detection system, right? I think the reaction system is one that's at issue primarily here, Your Honor. Right. So, I mean, you're saying it doesn't fall within 1.12.6. That's right, Your Honor. And so therefore, the term reaction system must somehow invoke some kind of sufficiently definite structure. Right.  The question before you is, there's a presumption that it is not 1.12.6, and the ALJ went and examined the record and said, this is being used to define a class of structures like detent mechanism in the Greenberg case and like break mechanism. In fact, in column 12 of the patent, at appendix page 14995, the patentees say at lines 3 and 4, a retraction system may be used in addition to or instead of other safety mechanisms. Figures 3 and 4 show side views of a table saw configured with both a retraction system and a breaking mechanism. They're using the word retraction system there to connote a structure of systems that are used, just like a breaking mechanism, but this one is one that retracts. And the ALJ found that, in fact, this did define a class of structures, not one specific embodiment. They go on and they use that phrase throughout the specification to talk about retraction systems in this more generic sense, like detent mechanism, breaking mechanism. I know the judge said that reaction systems somehow evoke the idea of a class of structures, but I don't think he went further and said, what are those class of structures? Your translation of class of structures is what, precisely? A class of structures would be one for a retraction system. That does breaking and or retracting? No, no. The break mechanism would be one class of structures. Retraction would be another class, and you can use both in a device if you so choose, and some embodiments have that. Retraction system would be one where you have a mount that's movable and an actuator that's going to mount the blade on it, and an actuator that is then going to move that away when the detection takes place. And that is how the patent is used, and that's how the ALJ found it, is that the retraction system is a broad class of structures. In fact, at the end of the patent, Your Honor, at Column 22, the patents go on and say, while one particular embodiment implementation of a retraction assembly 110 has been described, it will be appreciated that numerous alterations and modifications are possible within the scope of the invention. They're using the word retraction system like break mechanism, which the other side concedes is a class of structures. They're not using it any differently. They're saying there's a class of structures of retraction systems, which are well-known in the art, and there's breaking mechanisms. They're using it in the way that the ALJ said, which is it's a class of structures. If the claim, instead of saying reaction system, et cetera, configured to retract the cutting tool, it said a reaction means configured to retract the cutting tool, would that be a means-plus function? Would that be a means-plus function? No, Your Honor. I would not say it is a means-plus function because it would still be a – but, in fact, if you say breaking means for stopping something, someone would say, well, that's a breaking mechanism, and that's a class of structures. So I would not say that would be the case. It's not the issue here, of course. And, Your Honor, even if this language were functional, which we don't believe it is, the ALJ said it's not functional. It's a class of structures. That would still not give them grounds to knock the patent out. There would be one claim term out of several that supposedly has some functional aspect to it. That's not what ALIS is about. ALIS is taking a look at the entire claim. We're not attempting to claim all structures as they say that will break this. If you look at Claim 12, for example, it requires an explosive. So if you use something besides an explosive, you don't infringe Claim 12. Claim 8 requires a contact detection, but there's well-known systems that use proximity detection. So there's no claim here that is covering every single way of having a safety device. None of the claims do. In fact, if you look at Claim 16. Yeah, but that's not hardly, I mean, if you're talking about the preemption, I mean, that's not hardly necessary for preemption, right? You can look at a smaller field than the entire field to establish preemption. Yes, but their argument, Your Honor, is that we are preempting every way that you can try and make a device that is, there are claims here, and you have to look at each claim individually, every way you can make a device that will have a safety mechanism that will, as you said, if you put your finger against it, it's going to stop. Claim 16 of the 279 requires a retraction system. There are some systems that only use a brake. So if you have a brake-only system, you are not going to infringe Claim 16. So there's no preemption here whatsoever. The basis, if there was a preemption issue, if they said, well, you're covering too much, their own brief says on page 58 what their remedy was. They say, even if those systems and mechanisms were invented long ago by others or have not yet been invented, they had an opportunity to say that there was an anticipation issue here, that there was obviousness, that there's 112.1 issues. They couldn't establish any of that, Your Honor. These claims do not cover an infinite number of devices. There are ways to do, excuse me, there are ways to practice that don't meet the scope of these claims in every single instance. Thank you. I'm sorry, getting back to my reaction, means hypothetical? Yes, Your Honor. You're saying that would not be a 112F limitation because why? Because the language describing the operation of the reaction means to retract the cutting tool below the work surface within 14 milliseconds is enough description of the operation of the reaction means such that you would understand a class of structures in your mind that isn't indefinite? Well, Your Honor, indefinite would be a different question, but yes, that would be a class of structures. Well, that's the whole point of the 112.6 inquiries to try to figure out whatever buzzword that's being used. Is it a nonce word because it doesn't really give you any idea of what the structure is, or is it something that tells you enough of an idea of what the structure is or class of structures is to one of ordinary skill in the art that they would say, okay, I don't need to invoke 112F now in understanding this claim limitation? That's not the issue here, but, Your Honor, if a person read that over and said, I think this actually relates to or is a class of structures, there's just a presumption with the means. So it wouldn't necessarily mean that it's 112.6. Just as I said, like a breaking. If you say breaking means, someone would say, well, that just means to use a break. There's a class of structures that are breaks. But I said that's not the issue here. The issue here was one where the presumption went the other way and there was no evidence by the other side. And the court analyzed all the evidence in the LJ and decided that this was a class of structures, very consistent. The problem with your analogy is a breaking system, a break is a structure, whereas a reaction system, a reaction is not a structure. The structure is in response to, but it's not an actual structure. I am having a little bit of a hard time. Let's put waiver aside, because maybe that ends it. But I am having a little bit of a hard time understanding where in Claim 7's reaction system limitation is depicted a structure. It's through the phrase capable of retracting. In other words, you say, well, you're having trouble seeing that a breaking device is not one. Breaking is actually just the end result. It's the action there. There are mechanical parts that do that. And the point of that is that there's a well-known class of structures that will break. A retraction is similar. A retraction system in this industry is one where you have a mount, it's movable, and there's an actuator that's going to move it away. Which language did you say in the claim connotes structure? Yes, Your Honor. Claim 7. Where the reaction system is configured to retract the cutting tool below the work surface. The ALJ found that connotes retraction systems. And as I read in the patent specification itself, retraction system is used in a way to connote a class of structures. That class has a movable component and an actuator. And there's many different ways that you could do that. And therefore, this is a class of structures like a breaking mechanism or a detent mechanism. That's the language that the... When their expert looked at it, he didn't say it was 112.6. He said this is something a person skilled enough to read this, they know this is the thing that is describing the devices that retract. So in my head, when I see reaction system in the claim, I should think essentially retraction system? No, I said with the phrase where the reaction system is configured to retract. You're saying reaction system configured to retract the cutting tool below the work surface. You're saying that is describing a retraction system. Yes, Your Honor. And so therefore, maybe a shortcut in my head is when I see reaction system configured to retract, I should be thinking retraction system. And then you're telling me people with skill in the art understand what a retraction system is or what kind of class of structures a retraction system would be. That's right, Your Honor. And in fact, that's how the experts looked at it. They looked at that entire phrase and said this is describing retraction systems. If I said reaction, I misspoke. That phrase that I read to Judge Moore means that you are talking about a class of structures that are retraction systems because of that configured to retract. Thank you. Your Honor, the word excuse me, Your Honor, the word break is known in the mechanical arts as the name for structure. There is no evidence in this record that either reaction system or what we're hearing now, retraction system is known in the art as the name for structure. If it was, we would have a completely different case. If it said break, if it said detent, if it said screwdriver, if it said any of those words that are known as names for structure, then we wouldn't be in a Williamson zone. We wouldn't be in a functionality zone. But the only evidence in this record is the opinion of one expert that these claims refer to anything that performs the recited function. We do have some deposition testimony from another expert, from Sawstop's expert, who said a reaction system would be any system that causes a physical action. And we have the intrinsic evidence of what Sawstop intended to cover. And I think a very fair question for me is why on earth did you not walk into the hearing room at the Markman hearing and argue that this is all means plus function? The answer for that is the intrinsic evidence, which we laid out on pages 13 and 14 of our brief, that made it clear that this applicant absolutely was not trying to invoke, and in fact was trying not to invoke, means plus function law. And what we have said all along in the supplemental briefing, even in our very initial exchange of claim constructions with Sawstop is, if you look at the Williamson test, this is means plus function. However, in this case, unlike any other case that I'm aware of, there is strong intrinsic evidence that the applicant did not want to invoke means plus function. And so we have to decide what to do with the case when under Williamson it would be means plus function, but we know that that was not the applicant's intent. And labeling it a one-on-one problem may be bizarre. Figuring out the correct label for what the problem with these claims is has been difficult. And the difference in the law today versus when the Supreme Court decided Morse or Halliburton points that up. We did argue written description and enablement. We said that if what you're claiming is any machine that can do the job, invented now, invented before, invented in the future, then inherently you cannot have described every single possible machine to do that job. And inherently you cannot have enabled every possible machine to do that job. So you could look at it as a section 112 problem. I think that one-on-one post Alice is where the right label is. But if that's the wrong label, then that's the wrong label. Where did you argue in a brief to the ALJ that reaction systems should be understood as 112-6, 112-F? In the supplemental briefing, we argued every... What page? Do you have the page site? I think you want to turn to page 1819 of the appendix. So we presented to the ALJ exactly the same argument that we're presenting here, which is under the intrinsic evidence. He asked where in the appendix. Oh, okay. And I tried to help you by giving you a number if I'm wrong. I'm sorry. I didn't mean to. I didn't want to repeat. But yes, this is our supplemental claim construction brief where this argument with intrinsic evidence, Williamson, is laid out. And we included a table with what we thought the corresponding structure was for each of these limitations. I should point out something that's not... On page 1824 of the appendix, the second table up from the bottom on the 927 patent, we have reaction system described as break plus retraction system embodiment with some citations to the patent. I look at retraction as part of the function of that claim. It says it reacts by... This is your arguments of where the corresponding structure is. Correct. Assuming that these limitations are means plus function, but that's a different question. Is it, in fact, a means plus function? And if so, why is it a means plus function? That's section two of that brief, exactly as Her Honor indicated, beginning on page 1819. Right. And in that section, I'm looking for a paragraph that focuses in on reaction system. We dealt with the system elements as all being in the same bucket because reaction system and detection system both suffer from the same issues. We dealt with all of those, including, by the way, the mechanism having a movable component as being similar claims. One final thought. Can I have two final thoughts? I asked for one. All right. I think the answer to what case to look at in terms of recent cases may be the Miyazaki case, which is a Board of Patent Appeals and Interferences case, where the claim was written functionally. It did not use the word means. The Board said this is not section 112, sixth paragraph, but it is functional. Therefore, ipso facto, it's unpatentable. Because it didn't comply with means plus function requirement in 52A. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning.